CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 16 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| EDWIN RAMOS CRUZ, | ) | |
| Petitioner, | ) | Civil Action No. 7:07cv00185 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| GENE M. JOHNSON, Director of | ) | |
| Virginia Department of Corrections, | ) | By: Hon. James C. Turk |
| Respondent. | ) | Senior U.S. District Judge |

Petitioner Edwin Ramos Cruz ("Cruz"), a Virginia inmate proceeding pro se, brings this action for writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Cruz challenges actions taken by the Virginia Parole Board ("VPB") in calculating Cruz's mandatory parole release date and in denying him release on discretionary parole. Respondent filed a Motion to Dismiss to which Cruz filed a timely response, making the matter ripe for the court's consideration. Upon careful review of the pleadings and exhibits submitted by the parties, the court concludes that the Motion to Dismiss must be granted.

## I. Background and Procedural History

On May 28, 1976, Cruz, a Columbian citizen, was sentenced in the United States District Court for the Eastern District of New York to a total term of imprisonment of three years followed by seven years of parole on a conviction for possession of cocaine with the intent to distribute.[1] Upon his release, Cruz was deported from the United States back to his native Columbia on March 20, 1978. On September 10, 1979, Cruz was again arrested and charged in New York on eight new counts of felony drug possession. Cruz pleaded guilty to three counts of sale of a controlled

---

[1] The record reflects that the name "Edwin Ramos Cruz" may be an alias or the result of a name change. In New York, Cruz was sentenced under what is referred to as his "real name," Jaime Correa-Mina.

1

substance and was subsequently incarcerated until February 11, 1988, when he was paroled to a detainer which had been filed by the Immigration and Naturalization Service, and was again deported back to Columbia.

On July 25, 1990, Cruz again entered the United States and was arrested in Kings County, New York. As a result, the New York Division of Parole issued a warrant charging Cruz with a violation of his conditional release.[2] On September 11, 1990, a bench warrant for his arrest was issued in the Kings County Superior Court. On February 15, 1991, Cruz was again arrested in Kings County, New York on new criminal charges and, on March 20, 1991, another bench warrant was issued for his arrest in the Kings County Criminal Court. These bench warrants remain outstanding for his arrest.

On June 15, 1992, Cruz was arrested in Roanoke, Virginia by Officer R.F. Matheny on an outstanding warrant charging him with contributing to the delinquency of a minor. During the course of transportation in Officer Matheny's patrol car, Cruz deposited twelve plastic bags of cocaine under the right front seat of the car. Cruz was accordingly charged with possession of cocaine with the intent to distribute.

On July 21, 1992, Cruz was convicted in the Roanoke City Juvenile and Domestic Relations Court of contributing to the delinquency of a minor and was subsequently sentenced to a total term of imprisonment of 12 months with 9 months suspended. On March 22, 1993, Cruz was convicted in the Circuit Court of the City of Roanoke for possession of cocaine with the intent to distribute, and was subsequently sentenced to a total term of imprisonment of 40 years. Cruz was admitted to the Virginia Department of Corrections ("VDOC") on June 8, 1993, and was assigned Good Conduct

---

[2] This warrant was later forwarded to Virginia and filed as a detainer against Cruz.

2

Allowance ("GCA") class level II, earning 20 days of good time for each 30 days served.

Over the next three years, Cruz incurred a number of disciplinary infractions for which he lost previously accumulated good time and which eventually resulted in his placement in isolation, where he was not eligible to earn good time. On June 8, 1996, Cruz's status was reviewed and, due to his behavior and poor institutional adjustment, he was subsequently assigned to GCA class level IV, earning 0 days of good time for every 30 days served. As a result of the change in his class level assignment, Cruz's anticipated mandatory parole release date was recalculated to August 27, 2031. Cruz was alerted to this change in a Legal Update generated on March 18, 1997. Cruz has remained assigned to GCA class level IV, and his anticipated mandatory parole release date has remained 2031 ever since the June 8, 1996 review.

Cruz became eligible for discretionary parole consideration on March 29, 2002. He was subsequently interviewed by the VPB for parole in 2002, 2003, 2004, 2005, 2006, and 2007. Cruz was not granted parole on any of these occasions for a myriad of reasons including: "record of major institutional infractions, not ready to conform to society"; "serious nature and circumstance of offense"; "prior offense history indicates disregard for the law"; "involvement with drugs indicates disregard for the welfare of others"; and "prior failures under comm sup, unlikely to comply with the conditions of parole." (Resp't Answer 5; Resp't Ex. III 8).

In 2004, Cruz filed a petition for writ of habeas corpus in the Circuit Court for the City of Roanoke claiming that the VPB acted in an arbitrary and capricious manner in refusing to grant him discretionary parole, and that the conditions at Red Onion State Prison ("ROSP") are so harsh as to constitute cruel and unusual punishment. The court, holding that the VPB has "absolute discretion" on matters of reviewing and denying parole and that conditions of confinement at ROSP are not

3

grounds that can be considered in a habeas corpus proceeding to require the VPB to release Cruz, dismissed the petition on December 9, 2004. On July 6, 2005, the Supreme Court of Virginia refused Cruz's petition for appeal.

Cruz filed the instant Petition on April 11, 2007, raising the following four claims:

(A)   The state court erred in failing to determine that the VPB should have granted Cruz parole "after 30 years imprisoned on denial of liberty interest";

(B)   The VDOC improperly recalculated Cruz's projected good time release date from 2016 to 2031 in retaliation for filing "constitutional lawsuits against prison officials";

(C)   The VPB "arbitrarily and capriciously" denied Cruz parole on the basis that he is an elderly Latino man;

(D)   The VPB denied Cruz parole to a detainer in New York in violation of the Equal Protection Clause.

(Pet'r Writ Habeas Corpus 5, 6). Respondent moved to dismiss the Petition on May 18, 2007, arguing that the Petition is barred by the statute of limitations and, alternatively, that the state court's decision on the merits is entitled to deference. Cruz responded on June 5, 2007, and the Petition is now ripe for review.[3]

## II. Standard of Review

Respondent admits that Cruz properly exhausted his state court remedies. Therefore, this

---

[3] The court notes that Cruz faces procedural hurdles in having his claims addressed on federal habeas review. To the extent that Cruz is challenging the VPB's denial of parole before he filed his state habeas petition on February 15, 2004, his Petition is untimely, pursuant to 28 U.S.C. § 2244(d)(1)(D). The Supreme Court of Virginia's final order as to that matter was entered on July 6, 2005. Cruz's current Petition was filed on April 11, 2007, well beyond the one-year statute of limitations required under § 2244(d)(1)(D). Similarly, the alleged improper recalculation of Cruz's mandatory parole release date occurred on June 8, 1996. Accordingly, Cruz's current Petition is certainly untimely as to this issue as well. To the extent that Cruz may be challenging decisions the VPB has made since he filed his state habeas petition, claims concerning such decisions are not exhausted as required under 28 U.S.C. § 2254(b). In the interest of efficient justice, however, the court will address all of Cruz's claims on the merits and dismiss them, pursuant to 28 U.S.C. § 2254(b)(2).

4

court may address these claims under the standards set forth in 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"). Section § 2254(d) as amended by the AEDPA reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Applying the interpretation of this standard of review set forth by the Supreme Court of the United States in Williams v. Taylor, 529 U.S. 362, 413 (2000), a state court adjudication is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court on a set of materially indistinguishable facts." See also Lovitt v True, 403 F.3d 171 (4th Cir. 2005), cert. denied, 126 S. Ct. 400 (2005); Bell v. Jarvis, 236 F.3d 149, 157 (4th Cir. 2000) (en banc).

A state court decision unreasonably applies clearly established federal law if the state court, despite correctly identifying the governing legal principle, "unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. The Williams court stressed that Congress specifically used the word "unreasonable," and not a term like "erroneous" or "incorrect." Id. at 411. Thus, under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant

5

state court's decision applied clearly established federal law erroneously or incorrectly. Rather, the application must also be unreasonable. Id.; Booth-El v. Nuth, 288 F.3d 571, 576 (4th Cir. 2002); see also McLee v. Angelone, 967 F. Supp. 152, 156 (E.D. Va. 1997) (holding that the focus of federal court review is the state court decision that previously addressed the claims rather than the petitioner's freestanding claims themselves).

### III. Analysis

#### A.

Cruz first claims that the state court erred in failing to determine that he should be granted parole by the VPB. Cruz attempts to support this claim by pointing out that he has been imprisoned in the United States for a total of thirty years throughout his lifetime for "[u]njust" and "nonviolent crime[s]." (Pet'r Writ Habeas Corpus 5). The circuit court's rejection of Cruz's claim was based on its determination that Cruz was reviewed for parole and that the VPB had absolute discretion to deny parole. Although the state court decision "did not quote–or even cite–a federal case, this does not mean that it is contrary to . . . clearly established Federal law." See Mitchell v. Esparza, 540 U.S. 12, 17 (2003). In fact, the Supreme Court has held, with regard to the "contrary to" inquiry under § 2254(d)(1), that "a state court need not even be aware of [its] precedents, 'so long as neither the reasoning nor the result contradicts them.'" Id. (quoting Early v. Packer, 537 U.S. 3, 7 (2002)).

It is clear to this court that the state court's decision concerning Cruz's first claim is not "contrary to" federal law. Nor can this court find that the adjudication involved an unreasonable application of clearly established Federal law, or that it was based on an unreasonable determination of facts. Parole boards are entitled to considerable discretion and inmates are "entitled to no more than minimal procedure" during the parole review process. Vann v. Angelone, 73 F.3d 519, 522 (4th

6

Cir. 1996); Franklin v. Shields, 569 F.2d 784 (4th Cir. 1977) (finding that, at most, parole authorities must "furnish to the prisoner a statement of its reasons for denial of parole"). This standard has certainly been met as the VPB annually reviews Cruz's parole eligibility and sends him a letter explaining their decision. In this case Cruz has consistently been denied parole for several valid reasons, including his record of major institutional infractions. Therefore, the court finds that Cruz is not entitled to § 2254 relief as to this claim.

<strong>B.</strong>

Cruz next claims that the VDOC improperly recalculated Cruz's projected good time release date from 2016 to 2031 in retaliation for filing several lawsuits. The state court decision does not directly address this issue. In any event, this claim is without merit. Prisoners do enjoy a constitutional right to meaningful access to the courts, and prison officials do not have the power to retaliate against such right. Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978). However, the inmate must point to specific facts which tend to support his allegation of retaliation. White v. White, 886 F.2d 721 (4th Cir. 1989). Bare assertions of retaliation do not establish a claim of constitutional dimensions. Adams v. Rice, 40 F.3d 72 (4th Cir. 1994). In Adams, the Fourth Circuit stated that in order to establish a retaliation claim an inmate must "allege how or why defendants retaliated against plaintiff," and may not "conclusorily assert[ ] that the [conduct complained of] occurred as part of defendants' general scheme of retaliation." 40 F.3d at 74-75. Cruz's assertion that the VDOC improperly recalculated his release date in retaliation for filing lawsuits is pure conjecture. Without any supporting evidence, Cruz's mere assertion that the recalculation was improper and retaliatory is not a basis for granting the writ sought here. Accordingly, the court also

7

finds that Cruz is not entitled to § 2254 relief as to his second claim.[4]

## C.

Cruz also claims that his parole denial and placement in isolation status are both based solely on the fact that he is Latino. The state court decision again does not directly address this issue. In any event, this claim is also without merit. Allegations of discrimination that are merely conclusory are insufficient to state a claim. See Chapman v. Reynolds, 378 F. Supp. 1137 (W.D. Va. 1974) (holding that a claim of racial discrimination is a grievous charge, which certainly can rise to constitutional dimensions; but absent some factual evidence the court will not look behind the determinations of prison officials on mere accusations that they are racially motivated); Fuller v. Ga. Bd. of Pardons and Paroles, 851 F.2d 1307, 1310 (11th Cir. 1988) (where the plaintiff challenges actions of parole officials, exceptionally clear proof of discrimination is required). Although Cruz makes several accusations that he has been treated poorly because of his race, none of them find support in the facts at hand. Plaintiff has not proffered a single fact to support his claim of discrimination. Plaintiff's conclusory allegations of discrimination, without more, are simply not enough to state a constitutional violation. Accordingly, the court finds that Cruz is not entitled to

---

[4] The court takes judicial notice of the fact that an inmate's mandatory parole release date is an estimate only, subject to change based on changes in the inmate's other classifications. Classifications such as GCA class levels and good time earning rates are subject to change at any time during an inmate's incarceration, based on the behavior of the inmate and the discretion of prison officials. A prison regulation creates a liberty interest and implicates federal due process protections only where the regulation imposes upon the inmate conditions which dramatically depart from the expected conditions of his indeterminate sentence. See Sandin v. Conner, 515 U.S. 472 (1995). Since GCA class levels and good time earning rates are subject to change, a specific change to these classifications does not implicate federal due process protections. Id. Accordingly, since classification changes do not deprive Cruz of due process, the court also finds no due process problem with the changes to the estimates of his mandatory parole release date. The VDOC legitimately recalculated Cruz's mandatory parole release date because of his numerous disciplinary infractions. Regardless, an inmate has no constitutional right to be paroled at all before the expiration of his valid criminal sentence, let alone on a specific date. Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7 (1979).

§ 2254 relief as to his third claim.[5]

## D.

Cruz finally clams that the VPB denied him parole to a detainer in New York "despite [their] usual practice" and in violation of the Equal Protection Clause. (Pet'r Writ Habeas Corpus 6). To establish an equal protection violation, a plaintiff must first demonstrate that he or she has been "treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination;" once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny. See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Cruz's conclusory allegation that his denial of parole violates the Equal Protection Clause is insufficient to state a claim of discriminatory intent. Cruz does not allege that he was treated differently from any other similarly situated prisoner nor does he show, or even allege, that the "unequal" treatment was the result of intentional or purposeful discrimination. See Chapman v. Reynolds, 378 F. Supp. 1137, 1140 (W.D. Va. 1974). Because Cruz does not allege any of the requisite conditions to a cognizable claim, his equal protection claim fails. Accordingly, the court finds that Cruz is not entitled to § 2254 relief as to his final claim.

## IV. Conclusion

Accordingly, the court cannot find that the state court's adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, nor

---

[5] Furthermore, even if the court were to construe Cruz's argument as an attempt to construct an equal protection violation claim, his claim still fails. Cruz's claim is defective because he fails to even allege that he and a comparator inmate were treated differently and were similarly situated. City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432 (1985); see also Moss v. Clark, 886 F.2d 686, 691 (4th Cir. 1989) (for purposes of imprisonment and parole, the class to which an inmate belongs consists of the persons confined as he is confined, subject to the same conditions to which he is subject).

9

that the decision was based on an unreasonable determination of facts. The Respondent's Motion to Dismiss will be granted and an appropriate Order issued this day.

The Clerk is directed to send a copy of this Memorandum and Opinion and the accompanying Order to Petitioner and counsel of record for Respondent.

**ENTER**: This _16th_ day of August, 2007.

James C. Turk

Hon. James C. Turk
Senior U.S. District Judge